UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00689-RJC-DCK

| | |
|---|---|
| DAVID ABRAHAM CARMELY and MICHAL BARAMI CARMELY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **ORDER** |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

## I. INTRODUCTION

This case was tried before the undersigned on March 6-8, 2023. Plaintiffs David and Michal Carmely sued Defendant United States of America under the Federal Tort Claims Act ("FTCA") for injuries arising from a road collision between David Carmely and a United States Postal Service carrier, Tammy Miller. The Carmelys alleged claims for negligence, gross negligence, and loss of consortium. (Doc. No. 1).

Before trial, the Court denied the United States' motion for summary judgment as to gross negligence but granted the motion limiting loss of consortium to $25,000. Following the bench trial, the Court makes the following Findings of Fact and Conclusions of Law, concluding that Ms. Miller was negligent in operating her Postal Service vehicle; that Mr. Carmely may recover $1,860,601.68 under his negligence claim, and that Ms. Carmely may recover $25,000 for loss of consortium.

1

## II. FINDINGS OF FACT

On December 19, 2017, Defendant, U.S. Postal Worker Tammy Miller, drove her USPS vehicle on Hiwassee Road approaching the Huntingtowne Village Road intersection. She signaled a left turn and waited for traffic to clear. At the same time and place, Plaintiff, David Carmely approached from the opposite direction riding his motorcycle (Trial Transcript at 55-56 (hereinafter "Tr."))._[1]_ Wrongly thinking her path clear, Miller turned left, striking Mr. Carmely and his motorcycle, ejecting him into a wooded area near the intersection. (Pl. Ex. 22, at 47; Tr. at 57, 66-67).

At the time of the accident, Mr. Carmely was operating his motorcycle at a safe speed in his own lane of traffic, and he was not under the influence of any drugs or alcohol. (Pl. Ex. 22, at 47; Tr. at 25-26, 56-57). Ms. Miller, through her ordinary negligence, was the sole cause of the collision. (Pl. Ex. 22, at 47, 51-52; Tr. at 57). The Court does not find from the evidence that she held a "pink paper" in front of her face when she hit Mr. Carmely's motorcycle. (Pl. Ex. 22, at 58; Tr. at 57).

Mr. Carmely suffered grievous injury to his left leg. In addition, he sustained a wrist fracture, respiratory failure, traumatic shock, and hemorrhoidal problems, along with attendant mental health difficulties. (Pl. Ex. 61). Ultimately, Mr. Carmely underwent four surgeries for his leg and wrist, including surgeries to reset and repair the bones in his left leg and skin grafts. (*Id.*).

For months after his injury, Mr. Carmely was totally unable to walk. (Tr. at 71). But his condition improved over time. As of November 2018, Mr. Carmely could walk without a cane,

---

[1] Consistent with guidance from the Office of General Counsel, this Order relies on and references the Realtime Court Transcripts prepared during each Court session. Each Court session is identified as follows: Tr. (morning of March 6); Tr. 2 (afternoon of March 6); Tr. 3 (morning of March 7); Tr. 4 (afternoon of March 7); Tr. 5 (morning of March 8).

and though he occasionally did use a cane for support, he was able to enjoy many of the activities he did before his injury. (Def. Ex. 43; Def. Ex. 44; Def. Ex. 45; Def. Ex. 46; Def. Ex. 47; Def. Ex. 48; Def. Ex. 49; Pl. Ex. 61, at 905). Mr. Carmely has not fully returned to work. (Tr. at 86-88, 92-93, 100-101; Tr. 3, at 35-38).

Before the collision, Mr. Carmely worked as a garage repair technician for a business he owns with Ms. Carmely, DC Garage Repair (the letters "DC" refer to "David Carmely"). (Tr. at 39-42; Tr. 2, at 3). As a garage repair technician, Mr. Carmely performed a wide array of services: he created and managed customer accounts, he visited repair sites, he assessed garage door issues, and he repaired the garage doors himself, a job which he virtually always completed on a ladder. (Tr. at 40-42).

Though Mr. Carmely still visits repair sites and is able to manage customer accounts, assess garage door issues, and provide support to other technicians, he may be unable to perform some repairs himself if those repairs require working from a ladder at unprotected heights. (Tr. 4, at 110-111; Def. Ex. 43; Def. Ex. 44; Def. Ex. 45; Def. Ex. 46; Def. Ex. 47). Additionally, though Mr. Carmely is not working as technician, DC Garage Repair is more profitable than it was in 2017 – since Mr. Carmely's accident, the business hired two technicians to replace Mr. Carmely, and those technicians bring in considerable revenue. (Pl. Ex. 39; Tr. 3, at 37-40). Moreover, though at the time of the injury, Mr. Carmely owned 1% of DC Garage Repair and Ms. Carmely owned the other 99%, the two now own equal shares. (Pl. Ex. 34; Tr. at 43; Tr. 2, at 76-77).

Mr. Carmely will never fully recover from his injuries — as his attending physician, Dr. Hsu, testified, "his life was on a different path from the moment he was injured." (Tr. 2, at 69). In addition, Ms. Carmely has suffered loss of consortium. (Tr. at 115).

3

### III.   CONCLUSIONS OF LAW

The Court finds the following from the facts presented.

As a threshold matter, the United States is the proper defendant under 28 U.S.C. §§ 2671 *et seq.*, because this is a negligence claim for money damages arising from or out of an alleged negligent or wrongful act of a federal employee committed within the course and scope of her employment. Thus, any negligence by Ms. Miller gives rise to liability on the part of the United States.

At trial, after the Plaintiff had been fully heard, the Court granted Defendant a directed verdict under Federal Rule of Civil Procedure 52 on the issue of gross negligence. *See Carter v. Ball*, 33 F.3d 450, 457 (4th Cir. 1994) ("A district court sitting without a jury may enter judgment as a matter of law against a party on any claim once the party has had a full opportunity to present evidence on that claim.") (citing Fed. R. Civ. P. 52(c)).

North Carolina law requires a showing, by preponderance of the evidence, of intentional wrongdoing in order to sustain a claim of gross negligence. *F.D.I.C. ex rel. Co-op. Bank v. Rippy*, 799 F.3d 301, 314 (4th Cir. 2015) (citing *Yancey v. Lea*, 354 N.C. 48, 53–54, 550 S.E.2d 155, 158 (2001), *superseded by statute on other grounds*, N.C.G.S. § 1A-1, Rule 51(b) (2017)). The term "willful and wanton conduct" is often interchanged with gross negligence, and North Carolina courts describe gross negligence as "conduct done with conscious or reckless disregard for the rights and safety of others." *Rippy*, 799 F.3d at 314. "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 37–38 (1929), *quoted in Parish v. Hill*, 350 N.C. 231, 239, 513 S.E.2d 547, 551 (1999). An act is willful "when it is done purposely and deliberately

4

in violation of law or when it is done knowingly and of set purpose." *Foster*, 197 N.C. at 191, 148 S.E. at 37.

In the car collision scenario, gross negligence is often shown by circumstances where at least one of three "rather dynamic" factors is present: (1) defendant is intoxicated, *Foster*, 197 N.C. at 191, 148 S.E. at 37; (2) defendant is driving at excessive speeds (e.g., over one hundred miles per hour), *Baker v. Mauldin*, 82 N.C. App. 404, 346 S.E.2d 240 (1986); or (3) defendant is engaged in a racing competition. *Harrington v. Collins*, 298 N.C. 535, 259 S.E.2d 275 (1979); *Lewis v. Brunston*, 78 N.C. App. 678, 338 S.E.2d 595 (1986). While North Carolina courts have not specifically held these scenarios to comprise an exhaustive list, these examples are an appropriate guide for gross negligence in car collision cases. *Yancey*, 354 N.C. at 53–54, 550 S.E.2d at 158; *see also Blue v. Hill*, No. 5:18-CV-00445-M, 2020 WL 4677669, at *6-7 (E.D.N.C. Aug. 12, 2020) (granting summary judgment on a gross negligence claim under North Carolina law where a driver caused a collision by unsuccessfully attempting to change lanes); *Justice v. Greyhound Lines, Inc.*, No. 5:16-CV-132-FL, 2018 WL 1570804, at *3-6 (E.D.N.C. Mar. 30, 2018) (granting summary judgment on a gross negligence claim under North Carolina law where a driver caused a collision by driving too fast for conditions).

The only evidence adduced at trial that could support a finding of gross negligence is Mr. Carmely's unsubstantiated claim that Ms. Miller held a pink paper in front of her face while driving. The Court found Mr. Carmely's claim incredible, and thus, without any evidence on which to base a claim of gross negligence, the Court granted judgment as a matter of law on that claim

5

under Federal Rule of Civil Procedure 52.[2] The Court therefore addresses the remaining five legal disputes in turn.

### 1. Tammy Miller was negligent.

To prevail in a negligence action under North Carolina law, the burden is on the plaintiff to establish by a preponderance of the evidence the essential elements of negligence: (1) duty, (2) breach of duty, (3) proximate cause, and (4) damages. *Camalier v. Jeffries*, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); *Miller v. Henry*, 270 N.C. 97, 99-100, 153 S.E.2d 798, 800 (1967). A plaintiff's failure to meet the burden on any one element is fatal. *Clark v. Perry*, 114 N.C. App. 297, 305, 442 S.E.2d 57, 61 (N.C. 1994) (granting directed verdict) (citing *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E.2d 566, 570 (1981)).

Negligence and contributory negligence are mixed questions of law and fact. *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 97, 576 S.E.2d 345, 349 (2003). "The existence of a duty is entirely a question of law, and it must be determined only by the Court." *Peal by Peal v. Smith*, 115 N.C. App. 225, 230, 444 S.E.2d 673, 677 (1994) (cleaned up). A motorist upon the highway owes a duty of reasonable care to all other persons using the highway "to maintain a lookout in the direction in which the motorist is traveling," and thus, Ms. Miller owed that duty to Mr. Carmely. *Watson v. White*, 309 N.C. 498, 505, 308 S.E.2d 268, 273 (1983); *see also Exum v. Boyles*, 272 N.C. 567, 576, 158 S.E.2d 845, 852–53 (1968).

Ms. Miller breached her duty of reasonable care by turning into Mr. Carmely's lane and striking him. *See Peal*, 115 N.C. App. at 230, 444 S.E.2d at 677 (breach of duty is a question of

---

[2] Mr. Carmely also argued in his pre-trial filings and at trial that Ms. Miller was grossly negligent by violating various North Carolina traffic statutes. On its face, this argument fails; a plaintiff can show ordinary negligence through the violation of statutes (negligence per se), but to show gross negligence, a plaintiff still must provide evidence of willful and wanton conduct. *McDevitt v. Stacy*, 148 N.C. App. 448, 460, 559 S.E.2d 201, 211 (2002).

6

fact). According to evidence adduced at trial, Ms. Miller waited to turn left while Mr. Carmely approached her in the opposite lane. (Pl. Ex. 22, at 47; Tr. at 56-57). When Mr. Carmely was directly in front of her, Ms. Miller initiated a turn and struck him – in doing so, Ms. Miller failed to maintain a proper lookout in the direction she was traveling, and she breached her duty of care. (Pl. Ex. 22, at 47; Tr. at 56-57).

Ms. Miller's actions were the proximate cause of Mr. Carmely's injuries. *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 235, 311 S.E.2d 559, 566 (1984) (proximate cause is a question of fact); *Murphey v. Georgia Pacific Corp.*, 331 N.C. 702, 706, 417 S.E.2d 460, 463 (1992) ("Proximate cause is a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary prudence could have reasonably foreseen that such a result or some similar injurious result was probable."); *Peal*, 115 N.C. App. at 234, 444 S.E.2d at 679 (questions of reasonable foreseeability are also left for the factfinder). Ms. Miller's action – that is, her failure to keep a proper lookout while driving – is a cause which produced Mr. Carmely's injuries in a natural and continuous sequence, and a person of ordinary prudence could reasonably foresee that such a failure to keep a proper could result in a collision; indeed, such failures result in automobile accidents every day.

Finally, while the amount of damages is ordinarily a question of fact, the proper standard by which to measure those damages is a question of law. *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 548, 356 S.E.2d 578, 586–87 (1987). Mr. Carmely's damages are discussed at length in Section 3, *supra*. Thus, because Ms. Miller owed Mr. Carmely a duty of reasonable care to maintain a proper lookout, because she breached that duty, and because her breach was the proximate cause of Mr. Carmely's injuries, Ms. Miller was negligent under North Carolina law and the United States is liable for her negligence.

Ms. Miller was also negligent per se under N.C.G.S. §§ 20-141(a) and 20-141(m). To prevail on a negligence per se claim, a plaintiff must show the following: (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury. *Birtha v. Stonemor, N. Carolina, LLC*, 220 N.C. App. 286, 293, 727 S.E.2d 1, 8 (2012).

Under North Carolina law, failure to abide by certain traffic laws, such as N.C.G.S. §§ 20-141(a) (driving too fast for conditions) and 20-141(m) (failing to decrease speed to avoid accident), constitutes negligence per se. *McDevitt v. Stacy*, 148 N.C. App. 448, 458, 559 S.E.2d 201, 209 (2002); *McNeely v. Bollinger*, 155 N.C. App. 220, 573 S.E.2d 773 (2002) (table); *Cassetta v. Compton*, 256 N.C. 71, 74, 123 S.E.2d 222, 224 (1961). Under these statutes, their North Carolina interpretations, and evidence presented at trial, the Carmelys established a duty created by statute, that these statutes were enacted to protect other drivers like Mr. Carmely, that Ms. Miller breached the statutes by causing the collision, that Mr. Carmely's injuries were sustained by an interest protected in these statues, and that Ms. Miller's violation proximately caused Mr. Carmely's injury. Ms. Miller was therefore negligent per se under these statutes.[3]

---

[3] Mr. Carmely also argues negligence per se under N.C.G.S. § 20-154 (failure to turn safely), but under § 20-154(d), "A violation of this section shall not constitute negligence per se." *See also McEwen Funeral Serv., Inc. v. Charlotte City Coach Lines, Inc.*, 248 N.C. 146, 150, 102 S.E.2d 816, 820 (1958). Finally, Mr. Carmely argues negligence per se under N.C.G.S. § 20-155(b) (yielding to right of way), but North Carolina law likely prohibits a finding of negligence per se from only a violation of § 20-155, as interpreted under North Carolina's application to contributory negligence: "Our decisions hold that a failure so to yield the right of way is not contributory negligence Per se, but rather that it is evidence of negligence to be considered with other evidence in the case in determining whether the actor is chargeable with negligence which proximately caused or contributed to his injury." *Wagoner v. Butcher*, 6 N.C. App. 221, 231, 170 S.E.2d 151, 157 (1969) (applying § 20-155 and to a collision between a car and a pedestrian).

8

### 2. David Carmely was not contributorily negligent.

Contributory negligence is "negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant" to produce the plaintiff's injury. *Jackson v. McBride*, 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967). The defendant must demonstrate two elements, by preponderance of the evidence, to prove contributory negligence: (1) a lack of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury. *Construction Co. v. R.R.*, 184 N.C. 179, 180, 113 S.E. 672, 673 (1922). The defendant must show not only that the plaintiff was negligent, but that his negligence was *contributory* – i.e., that a real causal connection exists between the plaintiff's negligent act and the injury. *Id.* In North Carolina, a finding of contributory negligence poses a complete bar to a plaintiff's negligence claim. *Crawford v. Mintz*, 195 N.C. App. 713, 717, 673 S.E.2d 746, 749 (2009).

"The rule is well established in North Carolina that a motorist, although in his proper lane of traffic, must exercise ordinary care to avoid injuring persons or vehicles in his lane if he discovers their peril or in the exercise of ordinary care could discover it." *Rundle v. Wyrick*, 194 F. Supp. 630, 632 (M.D.N.C. 1961), *aff'd*, 300 F.2d 333 (4th Cir. 1962). Thus, Mr. Carmely owed a duty to exercise ordinary care while he drove. Taking all the evidence as presented at trial, Mr. Carmely did not exhibit a lack of due care – he drove his motorcycle at a safe speed, without the influence of drugs or alcohol, in his own lane, and Ms. Miller struck him there. (Pl. Ex. 22, at 47; Tr. at 56-57). Therefore, the United States is unable to establish that Mr. Carmely was contributorily negligent.[4]

---

[4] In their pre-trial filings and at trial, the parties noted the applicability of the doctrine of last clear chance. The last clear chance doctrine is a rule of proximate cause that allows a contributorily

9

Case 3:20-cv-00689-RJC-DCK   Document 86   Filed 04/13/23   Page 9 of 16

### 3. David Carmely is entitled to recover $1,860,601.68 from the United States.

Once a plaintiff shows that a defendant's negligence caused his injury, the plaintiff may recover damages for, among other things, his mental or physical pain and suffering, lost wages, and past and future medical expenses. *Iadanza v. Harper*, 169 N.C. App. 776, 780, 611 S.E.2d 217, 221 (2005); *Horne v. Roadway Package Sys., Inc.*, 129 N.C. App. 242, 245, 497 S.E.2d 436, 439 (1998). The plaintiff must establish his damages by a reasonable certainty, *Horne*, 129 N.C. App. at 245, 497 S.E.2d at 439, and he will be awarded the present cash value of his injuries as a lump sum. *King v. Britt*, 267 N.C. 594, 597, 148 S.E.2d 594, 598 (1966); *Mazza v. Huffaker*, 61 N.C. App. 170, 186, 300 S.E.2d 833, 844 (1983). The dollar amount of a damage award is a question for the factfinder. *See Horne*, 129 N.C. App. at 245, 497 S.E.2d at 438.

#### A. Mr. Carmely's Past Medical Expenses

In North Carolina, "Evidence offered to prove past medical expenses shall be limited to evidence of the amounts actually paid to satisfy the bills that have been satisfied, regardless of the source of payment, and evidence of the amounts actually necessary to satisfy the bills that have been incurred but not yet satisfied." N.C. R. Evid. 414. Mr. Carmely presented sufficient evidence of his past medical expenses and the United States stipulated to the reasonableness and authenticity of those past medical expenses. (Doc. No. 83; Tr. 5, at 4). Thus, Mr. Carmely is entitled to recover his past medical expenses as provided below: **$423,901.67**. (Pl. Ex. 84).

| Paid by Carmelys | Paid by Insurance | Outstanding | Total |
|---|---|---|---|
| $7,818.87 | $319,626.24 | $96,456.56 | **$423,901.67** |

---

negligent plaintiff to recover where defendant's negligence in failing to avoid the accident introduces a new element into the case, which intervenes between plaintiff's negligence and the injury and becomes the direct and proximate cause of the accident. Because Mr. Carmely was not contributorily negligent, however, the issue of last clear chance is moot.

### B. Mr. Carmely's Future Medical Expenses

Mr. Carmely is required to establish his future medical expenses with a reasonable certainty, and he did so with expert witness Deborah Caskey's report of projected medical costs. The Court finds Ms. Caskey's report persuasive with regard to Mr. Carmely's future medical expenses, and thus, Mr. Carmely is entitled to recover the full estimation of those expenses: **$23,010**. (Pl. Ex. 29, at 9).

### C. Mr. Carmely's Lost Wages

| Date | Year | Wages | Explanation |
|---|---|---|---|
| 2017 | 1 | $20,000 | full estimated salary as reflected in Pl. Ex. 42 |
| 2018 | 2 | $20,000 | full estimated salary as reflected in Pl. Ex. 42 |
| 2019 | 3 | $15,000 | 25% reduction in full estimated salary |
| 2020 | 4 | $15,000 | 25% reduction in full estimated salary |
| 2021 | 5 | $15,000 | 25% reduction in full estimated salary |
| 2022 | 6 | $15,000 | 25% reduction in full estimated salary |
| 2023 | 7 | $10,000 | 50% reduction in full estimated salary |
| 2024 | 8 | $10,273 | 50% reduction in full estimated salary with growth forecast |
| 2025 | 9 | $10,553 | 50% reduction in full estimated salary with growth forecast |
| 2026 | 10 | $10,842 | 50% reduction in full estimated salary with growth forecast |
| 2027 | 11 | $11,138 | 50% reduction in full estimated salary with growth forecast |
| 2028 | 12 | $11,442 | 50% reduction in full estimated salary with growth forecast |
| 2029 | 13 | $11,754 | 50% reduction in full estimated salary with growth forecast |
| 2030 | 14 | $12,075 | 50% reduction in full estimated salary with growth forecast |
| 2031 | 15 | $12,404 | 50% reduction in full estimated salary with growth forecast |
| 2032 | 16 | $12,743 | 50% reduction in full estimated salary with growth forecast |
| 2033 | 17 | $13,091 | 50% reduction in full estimated salary with growth forecast |
| 2034 | 18 | $13,448 | 50% reduction in full estimated salary with growth forecast |
| 2035 | 19 | $13,816 | 50% reduction in full estimated salary with growth forecast |
| 2036 | 20 | $14,193 | 50% reduction in full estimated salary with growth forecast |
| 2037 | 21 | $14,580 | 50% reduction in full estimated salary with growth forecast |
| 2038 | 22 | $14,978 | 50% reduction in full estimated salary with growth forecast |
| | | **$297,329** | |

Growth Forecast = 2.73% (Pl. Ex. 31, at 5).

Mr. Carmely is entitled to recover **$297,239** in lost wages. The Court, as factfinder, reaches this figure as follows: for Year 1 and Year 2, Mr. Carmely is entitled to his full salary as reflected in his 2017 W-2 tax form, rounded up to account for the remaining time in the year after his injury. (Pl. Ex. 42). As early as November 2018, Mr. Carmely's physician indicated that he "returned to work at his family owned company, working on garages." (Pl. Ex. 61, at 905). Though Mr. Carmely returned to work in 2018, he was not able to perform all the same work-related tasks that he performed before his injury. Thus, Mr. Carmely is entitled to his estimated salary with a 25% reduction for Years 3, 4, 5, and 6.

As Mr. Carmely continued to recover, he worked more; as of February 2023, Mr. Carmely was able to speak with customers, visit garage repair sites, assess garage door issues, and even perform some repair-related tasks (for example, carrying aluminum materials from the work van to the repair site). (Def. Ex. 43; Def. Ex. 44; Def. Ex. 45; Def. Ex. 46; Def. Ex. 47; Pl. Ex. 61, at 905; Tr. 2, at 27). At trial, the Carmelys argued that Mr. Carmely is totally unable to work due to physical limitations from his injury and other limitations related to his dyslexia. (Tr. at 44-46; Tr. 3, at 44-45). The Court finds that testimony unpersuasive; Mr. Carmely is now able to perform many of, though not all, the work-related tasks that he performed before his injury. Moreover, in 2021, Ms. Carmely, who at the time owned 99% of DC Garage Repair, chose to compensate Mr. Carmely with an additional 49% ownership in DC Garage Repair, notwithstanding his inability to perform garage repairs himself. (Tr. 3, at 101). In light of that compensation for Mr. Carmely's apparent value to the business, along with evidence presented at trial, Mr. Carmely is entitled to his estimated salary with a 50% reduction for Year 7.

Defendant's expert, Andrew Brod, agreed to several of the same methodologies used by Plaintiff's expert, Matthew Metzgar, in calculating Mr. Carmely's lost wages – namely, a wage

growth rate of 2.73% applied for the remaining expected fifteen years of Mr. Carmely's career. (Def. Ex. 23-a; Pl. Ex. 31). The Court finds this rate appropriate, and thus, for Years 8 through 38, Mr. Carmely is entitled to his estimated salary with a 50% reduction at a 2.73% growth rate. The Court declines to discount this award for consumption. The Court also declines to award Mr. Carmely the value of any lost household services, as those services fall into two non-compensable categories: (1) services that Mr. Carmely did not perform before his injury, or (2) services that Mr. Carmely can currently perform. (Tr. 4, at 52).

### D. Mr. Carmely's Pain and Suffering

Damages for past and future pain and suffering are an appropriate award in negligence actions, but there is no set formula for recovery of such damages. *King*, 267 N.C. at 597, 148 S.E.2d at 598; *Connelly v. Family Inns of Am., Inc.*, 141 N.C. App. 583, 595–96, 540 S.E.2d 38, 43 (2000) ("Pain and suffering damages are intended to redress a wide array of injuries ranging from physical pain to anxiety, depression, and the resulting adverse impact upon the injured party's lifestyle."); *Massengill v. Bailey*, 254 N.C. App. 611, 802 S.E.2d 918 (2017) (finding no error where the jury was charged, "[t]here is no fixed formula for valuing physical pain and mental suffering. You will determine what is fair compensation by applying logic and common sense to the evidence.").

Mr. Carmely presented extensive and compelling evidence of his pain and suffering, both in the past and that expected in the future. (Pl. Ex. 90; Pl. Ex. 91; Pl. Ex. 92-1; Pl. Ex. 92-2; Tr. 3, at 34; Tr. at 65, 108-109, 121). In opposition, experts for the United States provided persuasive testimony that Mr. Carmely may be overstating certain aspects of his current pain and suffering. (Tr. 4, at 74-115). Unquestionably, Mr. Carmely endured grievous pain in the days, weeks, and months after his injury, (Pl. Ex. 90; Pl. Ex. 91; Pl. Ex. 92-1; Pl. Ex. 92-2; Tr. at 65; Tr. at 108-109,

13

121), and the Court finds persuasive the testimony from Mr. Carmely, Ms. Carmely, and Dr. Hsu about the reality of mental suffering that Mr. Carmely experienced once he understood the reality of his injuries. (Tr. at 103-04; Tr. 2, at 82; Tr. 3, at 48).

Some of that pain will likely never subside, (Tr. 2, at 69), but Mr. Carmely has recovered from what may be the worst of his pain, and he is able to walk, to dance, to travel, and to work. (Pl. Ex. 61, at 905). Mr. Carmely requests a pain and suffering award equal to three times the amount of his other compensatory damages, claiming constant debilitating pain and inability to function normally. In light of evidence showing an otherwise fairly able-bodied Mr. Carmely, however, (Def. Ex. 43; Def. Ex. 44; Def. Ex. 45; Def. Ex. 46; Def. Ex. 47; Def. Ex. 48; Def. Ex. 49; Pl. Ex. 61, at 905; Tr. 4, at 74-115), the Court finds that Mr. Carmely is entitled to a pain and suffering damage award equal to 1.5 times the amount of his other compensatory damages, or half that which he requested: **$1,116,361.01**.

### E. Mr. Carmely's Total Damages

In light of the foregoing, Mr. Carmely is entitled to the below total damages:

| | | |
|---|---|---|
| $423,901.67 | Past Medical Expenses | *Full Measure of Past Medical Expenses* |
| $23,010.00 | Future Medical Expenses | *Full Measure of Future Medical Expenses* |
| $297,329.00 | Lost Wages | *Calculation in Section C, supra* |
| $1,116,361.01 | Pain and Suffering | *1.5x Other Compensatory Damages* |
| **$1,860,601.68** | **Total** | |

**4. Tammy Miller's negligence caused Michal Carmely's loss of consortium.**

A claim for loss of consortium embraces the service, society, companionship, sexual gratification, and affection lost by a spouse when a plaintiff is injured by a defendant's tortious action. *Keys v. Duke Univ.*, 112 N.C. App. 518, 521, 435 S.E.2d 820, 822 (1993). A spouse's loss

14

of consortium claim must be derivative of the other spouse's original claims for *their* injures by a third party, however. *Nicholson v. Hugh Chatham Mem'l Hosp., Inc*., 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980). Ms. Carmely properly brings such a derivative claim.

To prevail on her loss of consortium claim, Ms. Carmely must show, by preponderance of the evidence, that (1) she was married to Mr. Carmely (which the parties do not dispute); (2) their marriage included marital services, society, affection, companionship, or sexual relations; (3) those services, society, affection, companionship, or sexual relationships have been lost or disrupted; and (4) Ms. Miller's negligence was the proximate cause of that loss of consortium. *Id.*

Through Mr. Carmely's testimony and her own, Ms. Carmely demonstrated each element of her loss of consortium claim. Before Mr. Carmely's injury, the two were a normally functioning married couple – they supported one another, owned a business together, and provided one other the companionship and sexual fulfillment expected in a happy marriage. (Tr. at 42, 119; Tr. 3, at 49). The collision upended the Carmelys' marriage, however; since the accident, Ms. Carmely has served as Mr. Carmely's caretaker, and the two have struggled with emotional and physical intimacy as a direct result of Mr. Carmely's injuries and recovery. (Tr. at 119; Tr. 3, at 49). Thus, Ms. Carmely prevails on her loss of consortium claim and the United States is liable for her related damages.

### 5. Michal Carmely is entitled to recover $25,000 from the United States.

Damages in a loss of consortium claim are a measure of "damage to society, affection and companionship," *Nicholson*, 300 N.C. at 302, 266 S.E.2d at 822, and like damage awards for pain and suffering, their calculation is a measure of the factfinder's own "good sense and fair judgment." N.C.P.I. – Civil 810.30.

Here, Ms. Carmely's damages are limited to $25,000 under this Court's summary judgment order, (Doc. No. 54), because her claim is derivative of Mr. Carmely's and because her claim is limited by 28 U.S.C. 2675(b), which provides that an action under the FTCA "shall not be instituted for any sum in excess of the amount of the claim [previously] presented to the federal agency." Ms. Miller presented sufficient evidence to support a damage award of $25,000. (Tr. at 119; Tr. 3, at 49). Thus, because Tammy Miller's negligence caused Michal Carmely's loss of consortium, the Court finds that Ms. Carmely is entitled to damages of **$25,000**.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Judgment is entered against the United States in favor of David and Michal Carmely. The United States is liable to David Carmely in the amount of **$1,860,601.68**, and the United States is liable to Michal Carmely in the amount of **$25,000**.

2. The Clerk of Court is respectfully directed to enter judgment and close this case.

Signed: April 13, 2023

_____
Robert J. Conrad, Jr.
United States District Judge